We have two cases on the call this morning. In the first case, People v. Chambers, the argument time will be 15 minutes for the appellant, 15 minutes for the appellee, five minutes in rebuttal. I don't use the timing lights, but you'll be held to your time. So, Madam Clerk, call the case. 0147, People v. Turrell, Chambers. Good morning, Your Honors. Tom Gonzalez from the State Appellate Defender's Office on behalf of the appellant, Turrell Chambers. The trial court erred by denying Turrell Chambers' motion for a full Franks hearing after he made the requisite preliminary showing that Officer Tony DuBois used deliberate falsehood or reckless disregard for the truth to obtain the search warrant. The central question here is not whether the search warrant should have been quashed, it's just simply whether enough questions were raised to allow Chambers to challenge the veracity, particularly of DuBois. What exactly do you think constitutes the reckless disregard or the falsity that you're asserting? Well, there are several things that became known to the court when it denied the final motion in 2010. Okay, tell me a couple of them. Okay, six in particular I think warrant highlighting. One is DuBois' claim in his affidavit that he had been conducting a narcotics investigation of Chambers' Markham home for the previous three months, yet he conveniently omitted the fact that he had just joined the Markham PD three days before he swore to the warrant. He was a policeman, was he not? Yes, he was from another department. Could he have been conducting it as a member of the other police department? He just came there from a neighboring, an adjacent. From Harvey. Yes. Correct. Well, I guess that's a better question that deserves to be answered at a hearing. The purpose of the preliminary showing, I liken it to kind of the gist standard on post-conviction appeal. It's the whole idea behind it is to weed out spurious claims early on. In other words, Franks instructs that what the defendant must show is something beyond just a mere denial. Something beyond, well, no, I didn't do it, that's false. But let me look at this from the perspective of the judge out in Markham, the two judges who were involved with this, the first judge who actually issued the warrant and the second judge who did all the Franks' motions. Okay. Your client's coming in with what appears to be a series of people, each of whom is claiming to be the confidential informant. And the state never admits which one, if any of them, were the confidential informant. So doesn't that sort of undermine the need for the Franks' hearing here? I don't think so. So from that perspective, wouldn't we have to give them some benefit of some doubt? I don't think so. I think, if anything, it does the opposite. I think what happened was, and I agree, it was kind of a curious sequence of events. But the first person identified, and this was now defense counsel, and there's this whole timing of counsel being substituted and all that stuff. But once counsel Richards came on, I think that's when he started to dig further. And it was kind of at least unknown initially. And I think there was some confusion as to who that was. And, of course, Aaron Lindsay was first believed to be that person. So did the state ever allege or assert that Aaron Lindsay was the informant? Did any information that Mr. Lindsay was the informant ever come from the state? No. In fact, if anything, when defense counsel alluded to the fact that perhaps it might be, it appears that that was defense counsel's initial belief. And he even went so far as to question it. But the state came out and said, well, no, we never said that. We know now who the confidential informant was. We do. Correct. And he did issue the affidavit recanting, did he not? Myles Copeland was identified. And he issued an affidavit, did he not, recanting the testimony and the affidavit supporting the warrant? He did. But was he self-identified or was he identified by the state? Did the state actually reveal that that was who the CI was? Well, defense counsel identified him and the state did not dispute it. In fact, if anything, I think the record can be fairly read that the state pretty much agrees that that is the confidential informant. And again, to the extent that there's any confusion or that there's still any further question, we submit that that's, again, that's kind of the whole purpose of having the Franks here. What do you see as the standard of review in this case on the denial of the Franks here? What is the standard of our review? Well, I know that Lucente and some of the others speak to abuse of discretion. And I argued in my brief and I maintain that in this particular case, it should be, it's reviewable de novo, if nothing else. Well, the only one that seems to agree with you on that is the Ninth Circuit Court of Appeals. Pardon me? The only one that seems to agree with you on that issue is the Ninth Circuit Court of Appeals. Okay. The Seventh Circuit says clear error. The Illinois cases say abuse of discretion. The Eighth Circuit says abuse of discretion. Why isn't it an abuse of discretion standard? Well, if I may, I think, again, if you look at the way that ruling was issued, remember now, the Franks hearing was initially granted. Judge Clifford initially granted it. And then it kind of lingered on for months and then it became a year. And then the state, lo and behold, decides to file a motion to reconsider. In that motion and in the hearing on that motion to reconsider, the judge basically just says, hey, I'm going to look at the record that's been made so far. I'm going to look at Judge Clifford's prior ruling. And then there's this whole point about, you know, just how far did the alibi witnesses go and that kind of thing. So in short, so this court has the same capability of assessing the same evidence that the trial court belongs to. Okay. Assume it's abuse of discretion. Just humor me on that. Tell me why we should agree with you or agree that the trial court abuses discretion. It's a high burden, but there's got to be some facts to support a reversal, which is what you're asking us to do. So tell me why is it that the trial court abuses discretion in your opinion? Well, and I will say at the end of the day, it doesn't really matter what standard we operate under. I know, but I asked you the question, so I'd like you to answer it. Okay. Well, for the reasons as to why this claim is anything but spurious, for all of these six reasons, one, again, why I spoke to the omission by the block. That's not the standard that's required. In order to obtain the Frank's history, you must make a substantial preliminary showing that the affiant knowingly made a false statement in the affidavit on an issue of fact that was material to the issuance of the warrant. That was your burden to show. Correct. Now, it's not was it spurious, was it not spurious. Tell me why you think you made a substantial preliminary showing. Well, again, because it's something with the standard, it's less than preponderance. In other words, it does matter. Spurious meaning it's something beyond mere denials. And there's tangible things that was presented by defense counsel in support. There was tangible proffers that were made. In addition to the fact that this omission that I just spoke of regarding him not only being with a mark on PD for three days, there's also the fact that there was no records, there's no reports, there's nothing to support this previous investigation of the Markham home or Copeland's supposed cooperation with DuBois in prior cases. There's also, and of course the state, you know, doesn't rebut any of that. There's defense counsel. He also alleged that the mug shot of Chambers that was supposedly identified and signed by Copeland, that turned up missing. That's another allegation that wasn't rebutted. There's also defense counsel, of course now we get to the alibis, and this is significant. Because, yes, some of them didn't quite encompass the timeline. Okay, but again, the question is whether something tangible was raised, something beyond just mere denials. In particular, the affidavit of the girlfriend. Because they all collectively, and of course in Chambers' own affidavit, he said, I was working on plumbing in the Sherwood home. I was several blocks away. I could not have been there to engage in this cannabis buy on the 18th. I just wasn't there. We have one other little problem here. We have two first district decisions that are diametrically opposed. One is Grotestetto, and the other one is Cable. Grotestetto says you would get a Franks hearing if the confidential form had appeared before the issuing judge. Cable says that just is itself. So tell us why we should follow Cable and not Grotestetto. Well, I think Cable is more consistent with Franks. I mean, there's nothing in the Franks decision itself that speaks to that issue, that requires that kind of burden. And I think even more importantly, again, in this particular case, you know, we submit that this is kind of a highly unique case, given the officer involved here. Okay? It's well publicized in public information as to his history of misconduct, including Fourth Amendment violations and the civil suits filed against him, his recent admission. I mean, I don't dispute that. But how much of it is in this record? And can we start taking notice of things that aren't in this record? The purpose of reversing a judge who didn't have that information. No, that's correct. That's correct. But, again, I would submit under MATA that this kind of public information, you know, a simple Google search would reveal the pervasive pattern. Are we requiring judges to do Google searches? No, I'm not. I'm just saying that somehow it does speak to his underlying behavior as a police officer. And it just seems counterintuitive to say, well, you know, the defendant should be able to at least challenge someone's veracity. Mr. Gonzales, was any of this brought to the attention of the trial court? What you're saying now. Assuming that, you know, what you're saying is reasonable, but given all of this, did the judge know any of this before he was asked to rule on whether or not he should grant the Franks hearing? Not the stuff regarding his most recent civil problems, but certainly the fact his history of civil suits for Fourth Amendment violations. The defense counsel did bring that to light. Okay. So, again, and that's not a small thing. I mean, I think this is highly unique. All right. So I think that in answer to Justice Hoffman's question about, you know, this, first of all, I don't think the conflict at the end of the day really matters to resolution of this particular case. And I think even more importantly, even Busteta, they didn't have this type of alleged police coercion. There's no reported case that speaks to that. Let me answer one other question. If we were to reverse and send it back for a Franks hearing and the trial judge were to quash, do you think that your client could be subjected to a new trial or do you think it's double jeopardy? Well, part of the purpose of Franks is to deter police misconduct. Forget about police misconduct. We're talking about double jeopardy now. Does he get a new trial or doesn't he? I don't think he does. Does he rely on this evidence even though the warrant is quashed? It renders everything subsequent to that. Can you rely on that evidence to avoid the plea of double jeopardy? I don't think he'd be subjected to a new trial because of the fruits of that search warrant would have to be quashed. It's like it was illegally obtained. Before your time runs out, let me ask you about the sentencing issue because that's certainly of equal interest. Go ahead, Justice Cunningham. Tell me why the sentencing issue is an abuse of discretion since both sentences are within the parameters of the sentencing range for the crimes that he was convicted of. Well, again, we're not asking the court to re-weigh. We're just saying that sufficient weight wasn't given to... Why not? I mean, it's a substantial amount of years. A lot of people get a substantial amount of years. This man had possession of over 900 grams of cocaine. Sentencing range is 15 to 60. He got 45. He had enough guns to start an arsenal, including AK-47s, .40 caliber clocks. The range is 15 to 30. He got 25. What's wrong with that? Well, that's closer to the maximum. What? That's... It's north of the minimum. Don't you think somebody that has an arsenal in their house ought to get something north of the minimum? Well, I would just maintain what I said in the brief, which is it's still closer to the maximum than it is to the minimum. And that's... Some people get the maximum for one gun. This guy had an assault rifle. He had a personal arsenal in that house. But it's not like he had a history as long as your arm of having that. I mean, this was only like his second or third conviction. He was on parole when he was arrested. He had... All right. What's the standard of review for the sentence for us, for reviewing the sentence? For sentencing? It's abuse of discretion. Okay. And what's your best case for the fact that, in this case, the trial judge abused his discretion when the sentence handed down was within the sentencing parameters? What's the best case that this is a bad sentence and we should reverse it? Well, you know what? I don't have that off the top of my head. I mean, just in case I cited it in my brief. But I think, you know, it's, again, it's just the weighing of... I mean, he got hit pretty hard. And, yes, I acknowledge what Justice Hoffman said regarding, you know, the amount of weapons and all that kind of thing. But, again, we have to look at his background as well. And it is closer to the maximum. And when you factor in the consecutive sentence, I mean, it's a lot of years. Okay. Mr. Gonzalez, we'll give you some time on rebuttal. State? Okay. Thank you. Good morning, Your Honors. Assistant State's Attorney Alan Spellberg representing the people of the State of Illinois. Alan, or, pardon me, Mr. Spellberg, can you tell us from the beginning what you think the standard of review is on this Frank's hearing? The standard of review is what it has always been as a matter of Illinois law, pursuant to People v. Lucente, which is an abuse of discretion. In that case, the Illinois Supreme Court very clearly said that the decision to grant a Frank's hearing when the determination of whether or not a defendant has made a substantial preliminary showing is within the sole discretion of the trial judge. Because that judge is there to hear the arguments that are made. Okay. We understand that. But to obtain a Frank's hearing, the standard is fairly low. In this case, given all the irregularities that your opponent pointed out, what would have been the harm in granting a Frank's hearing? Well, Your Honor, if I could just take one step back in that, all the irregularities that my counsel points out, I'd like to point out what is actually not in dispute in this appeal. What is not in dispute is that Judge Panicci properly exercised his discretion to reconsider the original ruling for a Frank's hearing. Judge Panicci made the determination that Judge Clifford, in the first instance. Okay. But now answer my question, which is what would have been the harm in granting a Frank's hearing given there was a lot of oddities in this case. The original mug shot that was supposedly signed disappeared. The warrant disappeared. The officer had, for lack of a better word, some questionable activities in the past. We have an affidavit of the asserted confidential informant who now says, no, I only did that because the officer threatened me. All of those things. And then you have one circuit court judge overruling another. With all of those irregularities, my question is what would have been the harm in granting a Frank's hearing? And, Your Honor, I wasn't trying to evade your question. I was trying to say the harm would have been as identified in Lucente is that prior to Frank's, Illinois law was clear, we don't go behind the warrants at all. It was preclusive. You couldn't challenge the veracity of the affidavit at all. Frank's created a very narrow rule to be able to challenge veracity, and as Lucente said, it is a very narrow rule. It can only be done in certain instances. But the threshold is pretty low. If he alleges certain things, and I assert that it's not one thing. He didn't just give the affidavits. There are a number of irregularities about this case that's enough to raise some questions. Your Honor, that's why I'm trying to, if you would allow me, to go through the steps. The first three affidavits which the defendant offered regarding the alibi, which Judge Clifford relied upon, and then after the Scrivener's error was pointed out to Judge Panici, Judge Panici granted the motion to reconsider. Excuse me. A Scrivener's error was the wrong street number and the wrong street. It was a totally different street and a different number. Yes, Your Honor. It was Cherry Lane as opposed to Cherry Street, and it was 15410 as opposed to 15110. And what Judge Panici found was that it was a Scrivener's error. And so Judge Panici, in his discretion, made the determination that those affidavits were insufficient because the only non-related affidavit didn't cover the time frame of the purchase of the cannabis within the search warrant affidavit. So those affidavits were not sufficient. Then the defendant offered the Aaron Lindsay affidavit where he says, I'm not the person who was the confidential informant. The State had never said that he was the confidential informant. And not only was he not the person, but I didn't have anything to do with this. And his allegations don't match up to what the allegations were in the affidavit. He doesn't identify Officer DuBois at all. So there's nothing there which undoes. But since he's not the informant, that's irrelevant. What about Copeland? Then that's the next step because then Mr. Copeland's affidavit is offered. Again, the State has never identified him as the confidential informant. There's never been any identity. Are you saying he wasn't the confidential informant? I mean, the State did not deny. I don't know if he was or he wasn't. Well, let me ask you, what is your best guess? If he was not, don't you think they would have said so? Your Honor, again, I point to Aaron Lindsay. We didn't say he wasn't either. All we said was that he was not. We never said that he was. We don't give a definitive answer. You never said that Copeland was not. No. No. But as we said, we didn't say that he was either. We don't identify our confidential informants. But he said he was. He said he's the one that went before the judge. He said Du Bois forced him to say what he said before the judge or threatened to arrest him for narcotics violations. Now, the question that I have is really substantially the question that Justice Cunningham had. So what would have been the Harmon and Frank hearing? Nobody said you had to believe them. No, Your Honor. Isn't the integral hearing on the issue? Well, that's what I'm trying to say. Once you take Copeland's affidavit in conjunction with Lindsay's affidavit, in conjunction with the other affidavits, the alibi affidavits, the trial judge is obligated under the case law, including Caro, including Garastia, including Lucente, to look at everything as a whole. And when you look at that as a whole, you have a collection of defense evidence being offered which says nothing because Lindsay's affidavit and Copeland's affidavit are directly contradictory as to what they're saying. We don't know that because he didn't have a hearing. If they had had the hearing and you're here arguing that, that would be a different story. He never had a hearing. Your Honor, respectfully, we do know what they would testify to based upon their affidavits because Lindsay says he was arrested with Copeland and Cotton, with the marijuana that they got from a friend. I submit that if you could decide these matters based entirely on the affidavit, then there would be no point in having a hearing. We'd just look at the affidavits and make a decision. So the fact that something is in an affidavit, I think that that's just the threshold. It gives rise to additional questions. Don't you agree? Your Honor, absolutely. I agree. In no way am I saying that an affidavit is definitive of everything. It sounded like that to me. Let me ask you a question. If Mr. Copeland is telling the truth, the warrant gets quashed, doesn't it? Your Honor, I'm not saying that. Oh, come on, Mr. Spielberg. If Mr. Copeland said he was forced into giving false information to obtain a warrant and that's found to be true, you're not seriously consenting the warrant won't be quashed? Your Honor, no. What I was going to say was that in Copeland's affidavit, he specifically says that he presented before the judge, he was placed under oath before the judge, the judge told him that if he's lying, he could be sentenced to prison and ensured that he was saying everything that was the truth. And so what we have is the affidavit. Pardon? What did he say in his affidavit? He said that he did say that Officer DuBois told him that he carried a gun and that he could be facing three to five years himself. He didn't say that he forced him. I don't believe there's any specific reference that he forced him to make those statements. He said the statements that he gave to the judge were false, didn't he? I don't believe that is explicitly in there. I could be wrong, but I don't believe that. He didn't say they were untrue? I don't believe he explicitly said they were false. What did he explicitly say? I don't remember exactly. I believe he said that he was told what to say by Ms. Ferrell, but he didn't say that they were false. That's my recollection. I could be wrong on that. I admit that. Yeah, you could be wrong. I think your opponent is going to stand up here and read it to us in a minute. But if he did. Okay. Now, if he lied, let's try this real simply. If he lied and what he told that judge was untrue, you're not seriously contending that that warrant isn't going to be quashed, are you? Your Honor, that reads into the Garcia v. Carroll question, obviously. If he's there and he's testifying under oath as the non-governmental informant, then the question becomes, is a Frank's hearing even a valid question? Well, I mean, here, first of all, we have a split of authority. I don't know about my colleagues, but Garcetto makes no sense. Just because the confidential informant actually appeared before the judge, no Frank's hearing is ever allowed? Carroll says that's silly, and that is silly. So, I mean, if it's untrue, if it's untrue, if somebody lies and it's later proven that they lie, there should be a Frank's hearing to determine whether they lied to get that warrant. And the state shouldn't be able to hide behind a lie. You don't want to hide behind a lie. Your Honor, I'm not in any way asking to hide behind a lie. And if that's the impression I get, I apologize for that. What I'm trying to say, however, is that, as I said at the beginning, Frank's created a very narrow exception to the rule that you cannot go behind a warrant. Back to my original question, Mr. Svelberg, what would have been the harm in having a hearing? As Justice Hoffman said, you don't have to believe him, but you would get a chance to determine whether to believe him. What would have been the harm? At this point, if we do quash the search warrant, does he get retried? Is there a double jeopardy? Tell us what happened. Well, if I can answer Justice Cunningham's question first. The question of what the harm would have been was the question for the judge in the trial court. It's why it's a matter of his discretion. And that's why it's the abuse of discretion standard, which is why it's subject to reversal only if you find that it's fanciful. And so that's the harm. It's the harm for the judge to make the determination, the respect for the issuing warrant, for the magistrate who issues the warrant in the first place. That's the law as identified by Franks, Lucente, Petrenko, all the cases through. In terms of the question whether or not if the warrant is ultimately quashed, whether or not he could be subject to a new trial, the answer to that is yes, of course. Double jeopardy, People v. Oliveira, and I recognize this is not anywhere in the briefs because it wasn't litigated in this way at all, but double jeopardy is clear that even evidence which was wrongfully admitted, and we in no way say that this was, even evidence which was wrongfully admitted has to be considered for determination whether or not there was sufficient evidence at the first trial. And so under People v. Oliveira, under Lockhart v. Fretwell from the U.S. Supreme Court, there clearly is evidence here to support the finding of guilt beyond reason. In fact, it's not contested at all. So let me ask a question. If we were to reverse the trial judge on failure to grant a Franks hearing, this would go back on remand. We would never get to the issue of sentence in this particular appeal. We would send it back to the trial judge, order him to hold the Franks hearing, and if he quashes the warrant, if he quashes the warrant, to grant the defendant a new trial. And if he doesn't quash the warrant, then that affords the defendant an opportunity to appeal that issue, does it not? To appeal that issue. I would imagine, Your Honor, if that were the ruling remanding it for a Franks hearing, this Court would most likely retain jurisdiction to be able to review any other issues. I believe that's the proper mechanism that would be done in those types of situations. And, again, I'm not in any way conceding that that's what should be done here. I understand. Now, before you run out of time, what's your position on the sentence that you received? The sentence was proper. It was a proper exercise of the judge's discretion based upon the facts of this case. I mean, there were almost two kilos of cocaine in this case. There were, I believe, nine guns, including an AK-47. Just, as you stated, Your Honor, an arsenal. This is a very serious case with very serious facts, and the trial judge recognized that, recognized that this defendant was on probation at the time, was an appropriate sentence, was warranted. Helberg, I agree with you. It was serious, and I really had a lot of firearms. But isn't this, in essence, a life sentence? Your Honor, I... It's got 70 years. It is 70 years. I would say that it's not really 70 years. How old was this defendant at the time? I believe he was 32 years old. Okay, and he got 70 years. The life expectancy of a black male is what, 70-something, 73-point-something years? He got 70 years. Your Honor, I believe that this is not subject to truth in sentencing, so it would be a 35-year period of incarceration. So let me ask you another question. Assuming that what you say about the sentence that's handed down being within the parameters, so are you saying that whenever a trial judge gives a sentence, if it's within the parameters, that's within his discretion and the appellate court can never undo it? Is that correct? No, that's not what I'm saying, and obviously Rule 615 provides the court authority to reduce a sentence in extraordinary circumstances, but the abuse of discretion standard is the only... Well, on one charge, which ranged between 15 and 60, the first charge he got 45, and the second one he could have gotten, the range is 15 to 30 and he got 25. So your opponent says those are so far out of the box in terms of being on the upper end that we really ought to look at that and we should vacate those sentences. You're saying that it's within the sentencing range, so it's a trial judge's discretion and we can't touch it. I'm not saying it that simply, and I'm not trying to be cavalier in any way. What I'm trying to say is that the trial judge here heard all the evidence of the trial, heard all the extensive aggravation that was offered, heard the mitigation that was offered, made a determination at his discretion. Just two quick points in aggravation that you say would warrant this kind of a life sentence. Well, most importantly, the facts of the case are very aggravating. It's always the facts. That's what he got sentenced for in the first place. Right. Your Honor, but there are cases involving small amounts of drugs, there are cases involving large amounts of drugs. The larger the amount of drug, even within the range, is a more aggravating factor. There's cases involving single guns and multiple guns, and then types of guns that are involved. This gentleman had an arsenal of weapons, including assault rifles, including very dangerous weapons. Those are factors that are aggravating and are properly considered. On top of that, most importantly in my mind, is the fact that he was on probation at the time, meaning that he had shown a disrespect for complying with the law, shown a refusal to abide by the expectations of behavior. What was he on probation for? Was it because he had one juvenile issue, right? And then as an adult, I thought he had only one other conviction, which was for a crime that has now been declared unconstitutional. It was for aggravated unlawful use of a weapon. At the time, it was valid probation. There's no question that he was on probation at the time. The defendant has not made any challenge to that at all at this point in any way. But the key is that he knew he was on probation at the time and didn't abide by his behavior. That, in my mind, is the single most aggravating factor. Mr. Spielberg, thank you. Counselor Rebello? You got the affidavit? I don't have the actual affidavit, but I have the record, but it's in there. It's in the record. And in it, he clearly says, I lied because I was forced to do so. I mean, it's explicit. So I'm not quite sure what. And then I guess the other point, too, is Frank's, the whole ruling and reasoning behind Frank's is that it says we can't preclude any veracity challenge whatsoever. I mean, we can't make it so onerous that Frank hearings are never held. And I submit that if this case doesn't cry out for one, it's hard to envision what kind of case would. I mean, the claims here are far greater. They're not just serious claims. I mean, it's something tangible that was proffered. And regarding this whole question as to the affidavits and what they collectively show, again, I point out the girlfriend's affidavit does encompass the time. And, again, regarding any consistencies, inconsistencies, I mean, that's the whole purpose of the Franks hearing. That's the whole purpose of the Franks hearing. It's the same thing regarding, you know, what questions, was it Lindsay or was it Copeland? Again, the state clearly doesn't dispute that it was Copeland. So, again, there's plenty of the whole question is whether or not defense counsel should be able to flesh this out and that this claim should see the light of day in an adversarial proceeding. And we maintain that these claims definitely should see the light of day. Mr. Gonzalez, by the way, your point is entirely correct. They can use the illegally seized evidence on the question of global jeopardy. He gets tried again if he goes back and it's quashed. That's enough. Thank you. Thank you. Counselors, thank you. The matter will be taken under advisement.